**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ROBINSON IGLESIAS, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>SOUTHCROSS ENERGY PARTNERS, L.P., SOUTHCROSS ENERGY PARTNERS GP, LLC, SOUTHCROSS HOLDINGS LP, SOUTHCROSS HOLDINGS GP LLC, BRUCE A. WILLIAMSON, DAVID W. BIEGLER, ANDREW A. CAMERON, NICHOLAS J. CARUSO, JASON H. DOWNIE, WALLACE HENDERSON, JERRY W. PINKERTON, CHEROKEE MERGER SUB LLC, and AMERICAN MIDSTREAM PARTNERS, LP, )<br><br>Defendants, ) | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Robinson Iglesias ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public unitholders of Southcross Energy Partners, L.P. ("Southcross" or the "Company") against Southcross Energy Partners GP, LLC's Board of Directors (the "Board" or the "Individual Defendants"), which manages the Company, and the Board of Directors of Southcross Holdings GP LLC (the "Holdings Board")

1

for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to American Midstream Partners, LP through its wholly-owned subsidiary Cherokee Merger Sub LLC (collectively "AMID").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary registration statement (the "Registration Statement") to be filed with the Securities and Exchange Commission ("SEC") on January 11, 2018.  The Registration Statement recommends that Southcross unitholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Southcross will be merged with a wholly owned subsidiary of AMID. The Proposed Transaction was first disclosed on November 1, 2017, when Southcross and AMID announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which AMID will acquire equity interests in subsidiaries of Southcross Holdings LP that own Southcross Energy Partners GP, LLC, and will also acquire approximately 55% of Southcross's common units. Public unitholders of Southcross will receive 0.160 common units of AMID for each unit of Southcross that they hold (the "Merger Consideration").  The deal is valued at approximately $815 million.

3.      The Proposed Transaction is the product of a conflicted process dominated by Southcross Holdings LP. Even though the Southcross Conflicts Committee (the "Conflicts Committee") was expected to consider any potential transaction, it was the Holdings Board that decided to sell the Company to AMID. The Managing Partner of Tailwater Capital, LLC, who sits on the Holdings Board and the Board, and whose company owns one-third of Holdings and Southcross Holdings LP, dominated negotiations with AMID that increased the consideration paid to Holdings but not Southcross.

2

4.      The Merger Consideration is just one one-hundredth of a unit more than the low exchange ratio offered by AMID on September 20, 2017. The analysis provided by the Conflicts Committee's financial advisor, Jefferies LLC ("Jefferies"), found an implied exchange ratio as high as 0.245, 65% higher than the Merger Consideration.

5.      Furthermore, the Registration Statement is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Southcross management, and the financial analyses conducted by Jefferies.

6.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive registration statement ("Definitive Registration Statement") with the SEC or otherwise causing a Definitive Registration Statement to be disseminated to Southcross's unitholders, unless and until the material information discussed below is included in the Definitive Registration Statement or otherwise disseminated to Southcross's unitholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

7.      Plaintiff is, and has been at all relevant times, the owner of common units of Southcross.

8.      Defendant Southcross is a limited partnership organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 1717 Main Street, Suite 5200, Dallas, Texas 75201. Southcross common units trade on NYSE under

the ticker symbol "SXE." Southcross sources, purchases, gathers, processes, treats, compresses and transports natural gas.

9.      Defendant Southcross GP is a Delaware limited liability company. Southcross Energy Partners GP, LLC is the general partner of Southcross, and its board of directors and executive officers manage and operate Southcross.

10.     Defendant Southcross Holdings LP is a Delaware limited partnership. Southcross Holdings LP owns 100% of Southcross GP and controls Southcross GP.

11.     Defendant Holdings is a Delaware limited liability company. Holdings is the general partner of Southcross Holdings LP. Tailwater Capital, LLC and EIG Global Energy Partners, LLC each own one-third of Holdings.

12.     Defendant Bruce A. Williamson has been President and CEO of Southcross GP since January 6, 2017. Williamson has been a director since 2013, and became Chairman of the Holdings Board in July 2016.

13.     Defendant David W. Biegler served as Chairman of Southcross GP from August 2011 until January 6, 2017, CEO of Southcross GP from August 2011 to December 2014 and President of Southcross GP from October 2012 to March 2014. Biegler served as CEO of Holdings through December 2014 and served as Chairman of the Holdings Board from August 2014 to July 2016.

14.     Defendant Andrew A. Cameron has been a director of Southcross GP since January 2017. Cameron is a member of the Conflicts Committee.

15.     Defendant Nicholas J. Caruso has been a director of Southcross GP since July 2015. Caruso is a member of the Conflicts Committee.

16.     Defendant Jason H. Downie has been a director of Southcross GP since August

2014. Downie has also been a director of Holdings since August 2014. Downie co-founded and is Managing Partner of Tailwater Capital, LLC, which owns one-third of Southcross Holdings LP and one-third of Holdings.

17.     Defendant Wallace Henderson has been a director of Southcross GP since August 2014. Wallace has also been a director of Holdings since August 2014. Wallace is a managing director and senior member of EIG Global Energy Partners, LLC, which owns one-third of Southcross Holdings LP and one-third of Holdings.

18.     Defendant Jerry W. Pinkerton has been a director of Southcross GP since April 2012. Pinkerton is a member of the Conflicts Committee.

19.     Defendants Williamson, Biegler, Cameron, Caruso, Downie, Henderson and Pinkerton are collectively referred to herein as the "Board."

20.     Defendant AMID is a Delaware limited partnership with its principal executive offices located at 2103 CityWest Boulevard, Building 4, Suite 800, Houston, Texas 77042. AMID owns, operates and develops midstream energy assets, including midstream infrastructure that links oil and gas producers to intermediate and end-use markets.

21.     Defendant Cherokee Merger Sub LLC is a Delaware limited liability company and is a wholly owned subsidiary of AMID.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

23.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Southcross maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Southcross common units and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

26.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of October 30, 2017, Southcross had approximately 48.6 million common units outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)     Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Registration Statement with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction is Unfair to Unitholders

27.    The Proposed Transaction is a boon for AMID. After the Proposed Transaction closes, the combined company will have an enterprise value of approximately $3 billion and adjusted EBITDA of more than $300 billion annually. Both AMID and Southcross expect that there will be financial synergies of $15 million to $20 million annually within 18 months of the Proposed Transaction closing. The President and CEO of AMID was quoted in a November 8, 2017 conference call with analysts and investors stating that "[t]his acquisition is an absolute game changer [for AMID]."

28.    Despite the synergies and "game changing" nature of the Proposed Transaction, AMID offered an exchange ratio for Southcross common units that does not adequately compensate the unitholders. On May 24, 2017, AMID proposed a transaction where the Southcross non-affiliated unitholders would receive $80 million in AMID common units. On July 13, 2017, AMID revised its proposal to offer non-affiliated Southcross unit holders 0.230 AMID common units per Southcross common unit. The total value to non-affiliated Southcross unit holders would be $68 million. The exchange ratio increased slightly in the August 8, 2017 proposal, and stayed at that level even after AMID lowered its proposed valuation of Southcross and Southcross Holdings LP on September 14, 2017. Yet on September 20, 2017, AMID proposed an exchange ratio of 0.159 AMID common units per non-affiliated Southcross common units—a 10% discount to the exchange ratio from September 14, 2017. The Southcross

8

Conflicts Committee had to negotiate with a committee formed by the Holdings Board to increase the exchange ratio to 0.160, an increase of one one-hundredth of a unit.

29.     The analyses of the Conflict Committee's financial advisor illustrate that the Merger Consideration may not be high enough. For example, Jefferies's *Selected Public Companies Analysis* and *Selected Transaction Analysis* implied an exchange rate as high as 0.245, while the *Discounted Cash Flow Analysis* implied an exchange rate as high as 0.203.

30.     The process by which the exchange ratio was determined is an exemplar of the way in which the Board agreed to the Proposed Transaction. That is, Southcross Holdings LP dominated the negotiations, essentially forcing the Board into a sale with AMID. For example, when Southcross decided to consider strategic alternatives, it was somehow decided that the Holdings Board would choose the parties invited to participate in the second round of the process. And on May 26, 2017, the Holdings Board decided to negotiate a transaction with AMID without discussing first with the Board. In fact, the Board apparently did not receive information about the proposals received until June 1, 2017.

31.     Despite Defendant Williamson's statement, at the February 22, 2017 joint meeting between the Holdings Board and the Board, that the Conflicts Committee would evaluate potential strategic alternatives for Southcross or Southcross Holdings LP, the Conflicts Committee was only authorized to consider a merger with AMID. In fact, on at least four separate occasions Company D proposed different transactions with Southcross or Southcross Holdings LP. A July 10, 2017 proposal by Company D was deemed "inadequate," although the Registration Statement does not indicate who made that decision. Company D revised that proposal on July 14, 2017; the Registration Statement does not mention any decision made about that proposal. Another proposal was made on August 16, 2017, but "certain members" of the

Holdings Board considered the proposal "inferior" to the Proposed Transaction. Then Company D made another proposal on October 4, 2017, but that was nixed by the Holdings Board before the Conflicts Committee even learned of the proposal.

32.     The Conflicts Committee knew that the Holdings Board was controlling the negotiations with AMID. The Conflicts Committee met on September 21, 2017, after AMID proposed an exchange ratio of 0.159 for Southcross common units on September 20, 2017, to discuss "the process by which the terms of the transaction were being negotiated solely between AMID and Southcross Holdings." The Conflicts Committee decided to request a meeting with Southcross Holdings LP representatives to discuss the latest proposal and the negotiations. That meeting, held telephonically, occurred the next day, and after that meeting the Conflicts Committee decided to request a meeting in person to discuss the latest proposal, the negotiations, "and the SXE Conflicts Committee's desire to have input into the negotiation process."

33.     Defendants Pinkerton, Caruso and Biegler met, in person, with Defendant Williamson and a representative of Tailwater to discuss the Proposed Transaction. The result of that meeting was that the Conflicts Committee would negotiate with Southcross Holdings LP about how the total merger consideration would be allocated between the two companies. There would not be any negotiations with AMID to increase the exchange ratio; instead, Southcross Holdings LP negotiated to increase its consideration. And eventually the Conflicts Committee agreed to an exchange ratio only one one-hundredth greater than originally offered by AMID.

34.     In addition to being controlled by Southcross Holdings LP, the negotiation process was tainted by conflicts. Wells Fargo Securities, LLC served as a financial advisor to the Holdings Board, despite Wells Fargo Bank, N.A. being a party to an investment agreement with Southcross Holdings LP and Southcross, as well as a backstop commitment letter with both

companies, related to a waiver agreement and amendment to Southcross's revolving credit agreement.

35.     Another conflict involved Defendant Williamson, who is the CEO and President of Southcross. Yet Defendant Williamson was involved in negotiating the consideration to be received by Southcross Holdings LP, including in a meeting held on August 18, 2017, where AMID "assigned specific transaction expense allocations between Southcross Holdings and [Southcross]."

36.     Finally, in September 2017 Defendant Downie became actively involved in negotiations, specifically negotiating with a director of AMID's general partner who was also a partner at AMID's financial sponsor. Defendant Downie informed the Holdings Board on September 22, 2017 that he believed that the decreased exchange ratio in AMID's September 20, 2017 proposal did not impact Southcross's common unitholders, as they "were effectively receiving the same consideration as originally had been contemplated when the terms of the exchange ratio reflected a 10% premium." Defendant Downie was named to the special committee formed by the Holdings Board to negotiate with the Conflicts Committee concerning the allocation of merger consideration, and Downie led those negotiations. Defendant Downie held calls with AMID management and directors that led to an increase in the consideration paid to Southcross Holdings, but did not separately increase the exchange ratio for Southcross unitholders. Defendant Downie's active participation in negotiations is troubling given his role as Managing Partner at Tailwater Capital LLC, which owns approximately one-third of Southcross Holdings LP. As a director of the Board, he had a duty to ensure that any transaction maximized shareholder value. As Managing Partner at Tailwater Capital LLC, Downie had a duty to maximize his company's investment. This creates a conflict, as Southcross and

Southcross Holdings LP received different consideration in the Proposed Transaction, and Downie was in the center of negotiations that impacted what each company received.

**B.  The Preclusive Deal Protection Devices**

37.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

38.     By way of example, section 5.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.3(a) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

39.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be AMID. For example, pursuant to section 5.3(b) of the Merger Agreement, the Company must notify AMID of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 5.3(c)(i)(D) requires that the Board grant AMID five (5) calendar days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  AMID is able to match the unsolicited offer because, pursuant to section 5.3(c)(i)(C) of the Merger Agreement, the Company must provide AMID with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

40.     In other words, the Merger Agreement gives AMID access to any rival bidder's information and allows AMID a free right to top any superior offer.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Southcross, because the Merger Agreement

unfairly assures that any "auction" will favor AMID and allow AMID to piggy-back upon the due diligence of the foreclosed second bidder.

41.     In addition, pursuant to section 7.1 of the Merger Agreement, Southcross cannot terminate the Merger Agreement even if the Company decides to pursue another offer. Instead, only AMID can terminate the Merger Agreement, allowing AMID to force a vote on the Proposed Transaction despite the Board determining that another proposal is superior.

42.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

## C.  The Materially Incomplete and Misleading Registration Statement

43.     The Individual Defendants owe the unitholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to Southcross unitholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

44.     On January 11, 2018, Defendants filed the Registration Statement with the SEC. The purpose of the Registration Statement is, inter alia, to provide the Company's unitholders with all material information necessary for them to make an informed decision on whether to vote their units in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Southcross unitholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

45.     The Registration Statement discloses management-prepared financial projections

for the Company which are materially misleading.  The Registration Statement indicates that in connection with the rendering of Jefferies's fairness opinion, Jefferies reviewed information provided by Southcross management "including financial forecasts and analyses, relating to the business, operations and prospects" of Southcross, and similar information about AMID was provided by AMID's management.  Accordingly, the Registration Statement should have, but failed to, provide certain information in the projections that Southcross's management provided to the Board and Jefferies.

46.     Notably, Defendants failed to provide financial projections for Southcross for fiscal years 2017 to 2020 for: interest expense; maintenance capital expenditures; growth capital expenditures; and free cash flow.  In addition, the Registration Statement does not provide financial projections for AMID for fiscal years 2017 to 2020 for: cash paid for interest; preferred unit distributions; income tax expense; and maintenance capital expenditures.

47.     The Registration Statement also does not disclose the financial models provided to RBC by Deutsche Bank on June 9, 2017, July 19, 2017, and July 29, 2017. In addition, the Registration Statement does not disclose the financial models provided to Jefferies by Southcross on August 9, 2017, the AMID financial models provided to Southcross by Deutsche Bank on August 9-10, 2017, the updated AMID financial models provided to Southcross and its advisors on August 20, 2017, the financial models provided to Jefferies by Southcross on August 24, 2017, the post-Hurricane Harvey financial models provided to Jefferies by Southcross on September 16, 2017, and the financial projections provided to Southcross by AMID on October 12, 2017.

48.     This omitted information is necessary for Southcross unitholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Jefferies's Financial Analyses*

49.    First, with respect to the *SXE Selected Companies Analysis,* the Registration Statement fails to disclose the individual multiples for TEV/2017E Adj. EBITDA and TEV/2018E Adj. EBITDA for each of the selected public companies analyzed.

50.    With respect to the *AMID Selected Companies Analysis,* the Registration Statement fails to disclose the individual multiples for TEV/2017E Adj. EBITDA, TEV/2018E Adj. EBITDA, 2017E Distribution Yield, and 2018E Distribution Yield for each of the selected public companies analyzed.

51.    Second, with respect to the *SXE Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples for TV/FY+1 Ad. EBITDA for each of the selected transactions analyzed.

52.    With respect to the *SXE Discounted Cash Flow Analysis,* the Registration Statement fails to disclose the individual inputs and assumptions utilized by Jefferies to derive the discount rate range of 10.6% to 11.6%. The Registration Statement also fails to disclose the range of implied perpetuity growth rates resulting from the analysis, as well as the terminal year estimate of Adjusted EBITDA to which the selected terminal multiples were applied.

53.    Finally, with respect to the *AMID Discounted Cash Flow Analysis,* the Registration Statement fails to disclose the individual inputs and assumptions utilized by Jefferies to derive the discount rate range of 15.6% to 16.6%. The Registration Statement also fails to disclose the range of implied terminal EBITDA multiples resulting from the analysis, as well as the terminal year estimate of distributed cash flow to which the selected distribution yields were applied.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

54.     The Registration Statement also fails to disclose material information concerning the sales process. For example, the Registration Statement fails to state whether the confidentiality agreements Southcross entered into with at least 26 parties (other than AMID) are still in effect and/or contain DADW standstill provisions that are presently precluding each and every one of these parties from making a topping bid for the Company.

55.     The disclosure of the terms of any standstill provisions is crucial to Southcross unitholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information is especially important where, as here, the Registration Statement is silent as to whether any confidentiality agreements contained a standstill agreement and whether any standstill agreements have been waived. Indication of interest were provided by 11 other parties, with four parties providing proposals: Company AB, Company C, Company D and AMID. Company D provided at least four separate proposals. Yet the Registration Statement is silent as to whether Company AB, Company C and Company D may now be foreclosed from making a superior proposal.

56.     In addition, section 5.2(a)(vii)(D) of the Merger Agreement prohibits the Board from waiving any previously executed standstill agreement (the "Anti-Waiver Provision"). Whether the Board agreed to that provision knowing that agreements with any party other than AMID contained such a standstill agreement, must be disclosed to Southcross unitholders before they decide on voting for or against the Proposed Transaction.

57.      The Registration Statement includes a written opinion by Jefferies about the fairness of the Merger Consideration to the Southcross unitholders. That written opinion notes that Jefferies has provided financial advisory services to both AMID and the Conflicts

Committee, but only discloses fees received from the Conflicts Committee. The Registration Statement must include more information about prior work undertaken by Jefferies for Southcross, AMID and Southcross Holdings LP, or any other entity affiliated with Southcross. In addition, the Registration Statement should disclose any future work that Jefferies will or expects to undertake for AMID.

58.    The Registration Statement also fails to disclose who determined that Company D's offer of July 10, 2017 was inadequate and whether the Conflicts Committee and/or the Board were involved in that determination.

59.    The Registration Statement fails to disclose the basis for the Conflicts Committee only being authorized to consider the Proposed Transaction in August 2017.

60.    In addition, the Registration Statement fails to disclose whether Jefferies had access to all of the materials and information provided to RBC Capital Markets, LLC by both Southcross Holdings LP and AMID. The Registration Statement also does not disclose whether Jefferies was informed that AMID's reason for reducing its purchase price on September 14, 2017 was a calculated decline in Southcross's EBITDA up to $12 million.

61.    The Registration Statement fails to disclose the Conflicts Committee's discussions and considerations of the "force-the-vote" provision recommended by AMID. The Registration Statement also fails to disclose whether the revised list of open items sent to AMID's counsel by Southcross Holdings LP's counsel, which was "prepared with input from Akin Gump," included the Conflicts Committee's determination as to the "force-the-vote" provision.

62.    The Registration Statement also fails to disclose whether, after AMID's September 20, 2017 proposal, the Board, the Conflicts Committee and/or the Holdings Board

17

discussed or considered negotiating with AMID for a higher exchange ratio for Southcross common units and, if so, the basis for determining not to conduct such negotiations.

63.     In addition, the Registration Statement does not disclose the outcome of Jefferies's October 14, 2017 conversation with Defendant Downie on behalf of the Conflicts Committee.

64.     The Registration Statement also does not disclose Jefferies's preliminary financial analyses of the exchange ratio agreed to by the Conflicts Committee, as presented to the Conflicts Committee on October 17, 2017, including the actual exchange ratio and the 20-trading day VWAPs of AMID and Southcross common units utilized by Jefferies in its analysis.

65.     The Registration Statement fails to disclose the basis for Jefferies's absence at the October 17, 2017 telephonic meeting that confirmed the financial models to be used for the transaction. The Registration Statement also fails to disclose whether Jefferies received those financial models, and whether Jefferies utilized those financial models when determining the fairness of the Merger Consideration.

66.     Finally, the Registration Statement fails to disclose the nature and status of the Southcross litigation matters that were included in the August 15, 2017 and September 20, 2017 AMID proposals. The Registration Statement also does not disclose the nature of the potential litigation matters discussed at the August 17, 2017 Board meeting, the nature and status of the outstanding litigation matters discussed at the September 22, 2017 Holdings Board meeting, and the nature and status of the litigation matters discussed at the October 10, 2017 Conflicts Committee meeting. In addition, the Registration Statement does not disclose the nature and status of the litigation matters discussed by AMID's legal counsel and Southcross's outside legal counsel on October 27, 2017, as well as the nature and status of the litigation matters to which

Southcross provided additional due diligence information to AMID's legal counsel in the days following October 27, 2017.

67.     This information is necessary to provide Company unitholders a complete and accurate picture of the sales process and its fairness.  Without this information, unitholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Southcross unitholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

68.     In addition, the Individual Defendants knew or recklessly disregarded that the Registration Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

69.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Registration Statement before it was filed with the SEC.  Indeed, as directors of the Company, they were required to do so.  The Individual Defendants thus knew or recklessly disregarded that the Registration Statement omits the material information referenced above and contains the incomplete and misleading information referenced above.

70.     Further, the Registration Statement indicates that on October 17, 2017, Jefferies reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion on October 31, 2017, which was confirmed by delivery of a written opinion dated the same day, to the effect that the Merger Consideration was fair, from a financial point of view, to Southcross unitholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Jefferies's financial analyses which has been omitted from the Registration Statement, and thus knew or should have

known that such information has been omitted.

71.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

72.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

73.     Defendants have filed the Registration Statement with the SEC with the intention of soliciting Southcross unitholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide the material information referenced above.

74.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Southcross, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

75.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to

make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

76.     Specifically, and as detailed above, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Southcross common units and the financial analyses performed by Jefferies in support of its fairness opinion; and (iii) the sales process.

77.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Registration Statement is materially misleading and omits material information that is necessary to render it not misleading.   The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Jefferies reviewed and discussed its financial analyses with the Board during various meetings including on October 17, 2017 and October 31, 2017, and further states that the Board relied upon Jefferies's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

78.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

79.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of Southcross within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Southcross and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

81.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to the time the Registration Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the

Registration Statement.

83.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

84.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and her counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Registration Statement with the SEC or otherwise disseminating a Definitive Registration Statement to Southcross unitholders unless and until Defendants agree to include the material information identified above in the Definitive Registration Statement;

C.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 22, 2018                    **KENDALL LAW GROUP, PLLC**


                                           /s/ Joe Kendall
                                           _____
                                           Joe Kendall
                                           Texas Bar No. 11260700
                                           jkendall@kendalllawgroup.com
                                           Jamie McKey
                                           Texas Bar No. 24045262
                                           jmckey@kendalllawgroup.com
                                           3232 McKinney, Suite 700
                                           Dallas, Texas 75204
                                           Tel: (214) 744-3000
                                           Fax: (214) 744-3015

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514